## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JAMES MACCARIELLA, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff.<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES N.V., and FCA US LLC,<br><br>Defendants. | No. 2:19-cv-10791<br><br>**COMPLAINT—CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT—CLASS ACTION- 1

Table of Contents

I.     INTRODUCTION ..................................................................................1

II.    NATURE OF THE ACTION ..................................................................1

III.   PARTIES ..............................................................................................6

       A.    Plaintiff ......................................................................................6

       B.    Defendants..................................................................................6

IV.    JURISDICTION AND VENUE .............................................................9

V.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS .................11

       A.    Defendants' emission-related problems are familiar. .......................16

       B.    Testing Reveals Emissions Problems With the Class
             Vehicles ...................................................................................19

       C.    A Key Component of the Class Vehicles' Emissions
             System—The Catalytic Converter .................................................20

       D.    Injury to Consumers ..................................................................24

VI.    CLASS ACTION ALLEGATIONS ........................................................30

       A.    Class Definitions .......................................................................30

       B.    Class Certification Requirements.................................................32

VII.   ANY APPLICABLE STATUTES OF LIMITATION ARE
       TOLLED ..............................................................................................36

       A.    Tolling Due To Defendants' Concealment ...................................37

       B.    Estoppel ....................................................................................38

VIII.  CLAIMS FOR RELIEF.........................................................................39

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

A.    Claims Asserted on Behalf of the Nationwide Class ........................39

B.    State Class Consumer Protection Claims ..........................................42

IX.    PRAYER FOR RELIEF ................................................................................52

X.    DEMAND FOR JURY TRIAL ....................................................................55

COMPLAINT- 2

## I.    INTRODUCTION

Plaintiff Maccariella, individually and on behalf of all others similarly situated ("the Class"), alleges the following against auto manufacturer/distributor FCA US LLC ("FCA") and its corporate parent Fiat Chrysler Automobiles N.V. (together, "Fiat Chrysler" or "Defendants"); based where applicable on personal knowledge, information and belief, and the investigation of counsel.  This Court has jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## II.    NATURE OF THE ACTION

1.    Fiat Chrysler consumers did not receive what they paid for when they bought or leased one of the following gasoline-powered vehicles (collectively, the "Class Vehicles"):

a.    2011-2016 MY[1] Dodge Journey (FWD[2])

b.    2011-2014 MY Chrysler 200 / Dodge Avenger (FWD)

c.    2011-2012 MY Dodge Caliber (FWD, CVT[3])

d.    2011-2016 MY Jeep Compass/Patriot (FWD, CVT)

2.    Approximately 900,000 Fiat Chrysler consumers like Plaintiff Maccariella are outraged to learn from news reports that surfaced on March 13,

---

[1] Model year.
[2] Front-wheel drive.
[3] Continuously variable transmission.

COMPLAINT—CLASS ACTION- 1

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2019 that they must (among other things) devote time and energy to obtaining critical vehicle repairs.

3.     But these just-announced repairs are no ordinary "in and out" fixes. Reportedly the fixes include a replacement of Class Vehicles' catalytic converter and changes to the powertrain control module.[4]

4.     Catalytic converters are comprised of, in part, precious metals, such as palladium. The market for palladium is "already reeling from shortages."[5]

5.     Because the equipment to perform repairs on their vehicles may be in short supply, and the vehicles' fixes are being made available on a set quarterly schedule with the oldest vehicles first, consumers must wait their turn for a fix. Consumers' vehicles may thus become an idled resource, parked in driveways without the necessary registrations to be driven, sold, or otherwise utilized.

6.     And—perhaps most outrageous of all—consumers may not be able to renew their vehicles' registrations if emissions testing is required in their jurisdiction.  In California, where tens of thousands of Class Vehicles are located, regulators have already made this restriction abundantly clear.

---

[4] Kelsey Mays, *Chrysler, Dodge, Jeep Emissions Recall: What Owners Should Know,* Cars (Mar. 14, 2019), https://www.cars.com/articles/chrysler-dodge-jeep-emissions-recall-what-owners-should-know-1420757590245/ (last visited Mar. 15, 2019).

[5] Justina Vasquez and Marvin Perez, *Fiat Recall Leaves Palladium Buyers Bracing for 'Supply Shock',* Bloomberg (Mar 13, 2019), https://www.bloomberg.com/news/articles/2019-03-13/fiat-recall-leaves-palladium-buyers-bracing-for-supply-shock (last visited Mar. 15, 2019).

COMPLAINT—CLASS ACTION- 2

7.     In the words of the Environmental Protection Agency's March 13, 2019 announcement (the "EPA Announcement"), "[o]wners of affected vehicles will receive notification [f]rom [sic] FCA when parts are available for them to bring their vehicle into be repaired, and owners can continue to drive their vehicles in the meantime.  Owners who live in locations subject to inspection and maintenance may be required to have the recall performed prior to having the inspection performed."  Further, announcements from the EPA leave the door open for additional vehicles to be subject to recall for similar reasons.

8.     Notwithstanding the risk that consumers may not be able to pass required emissions testing without a fix, the EPA Announcement urges patience "[d]ue to the large number of vehicles involved and the need to supply replacement components—specifically to the vehicle's catalytic converter[.]"  Accordingly, the "recall will be implemented in phases during the 2019 calendar year beginning with the oldest vehicles first."  The EPA announcement set forth a schedule for implementation of the recall that will last for the duration of 2019:

    a.     2011 MY - Q1 2019

    b.     2012 MY - Q2 2019

    c.     2013/2014 MY - Q3 2019

    d.     2015/2016 MY - Q4 2019

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

9.     The California Air Resources Board took a blunter approach in its own announcement (the "CARB Announcement").  In a significant announcement for all affected consumers in California, CARB has declared that **consumers "who fail to get the necessary repairs will not be able to register their vehicles."** Make no mistake, this recall is anything but "voluntary" and "routine" for residents of California.

10.     Thus, at a minimum, consumers are facing the following obstacles:

a.     Their vehicles' emission systems are not working the way they expected the systems to work when they purchased or leased their vehicles.

b.     They must wait for their vehicles' turn to get it fixed, assuming both 1) that the fix will be a comprehensive solution that will not cause new issues, and 2) that consumers don't have to pay for additional repairs in order for technicians to implement the fix.

c.     Their vehicles may not be able to pass emissions testing until they are repaired.  In California, this is a certainty according to CARB.  Of course, if the vehicle can't be registered, California consumers may not be able to sell their vehicle while awaiting repairs—or otherwise face restricted options for sale while awaiting repairs (options which may affect the value a consumer can obtain).

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

d.      The resale value of the Class Vehicles may have declined as a result of these and other emissions-related announcements by EPA and CARB.

11.     After the EPA and CARB Announcements went live, FCA was contacted for comment about the recall.  FCA indicated that the recall "was accounted for in last year's financial documents."[6]  But FCA has still said nothing to the vast majority of its own consumers, despite the fact that FCA has been under considerable scrutiny in the wake of its EcoDiesel emissions issues.[7]  Instead of disclosing to consumers the true nature and extent of its vehicles' emissions issues, FCA has continued its ardent efforts to boost its own bottom line, at consumers' considerable expense and inconvenience.

12.     Needless to say, as of March 13, 2019, FCA consumers once again find themselves in an emissions bind, and once again, this conundrum is of FCA's making.

---

[6] *Id.*

[7] "The company declined to release the expected cost of the recall but said it was accounted for in last year's financial documents."  *See* Eric D. Lawrence, *Fiat Chrysler to recall more than 860,000 vehicles in new emissions probe, EPA says,* Detroit Free Press (Mar. 13, 2019) **Error! Hyperlink reference not valid.** (last visited Mar. 15, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## III.   PARTIES

### A.   Plaintiff

13.     Plaintiff **James Maccariella Jr.**, a resident of Marlton, New Jersey, is the owner of two Class Vehicles, a 2015 Jeep Patriot and a 2016 Jeep Compass. Mr. Maccariella purchased the 2015 Patriot for approximately $20,600 in May 2015, and he purchased the 2016 Compass for approximately $26,500 in March 2016.  Plaintiff has received no information related to the EPA and CARB Announcements from FCA about any emissions issues with his Class Vehicles. Plaintiff would not have purchased the Class Vehicles, or would have paid less for his vehicles, had he known that they would not comply with emission standards; that they require one or more emissions repairs to become emissions compliant; that they may not retain their resale value; and that they may not in the future achieve the advertised performance and/or fuel economy.

### B.   Defendants

14.     Defendant **FCA US LLC ("FCA")** is a Delaware limited liability company.  Defendant **Fiat Chrysler Automobiles N.V. ("Fiat" or, together with FCA, "Fiat Chrysler")** is FCA's corporate parent.  In 2009, Fiat's predecessor, Fiat S.p.A., began its acquisition of FCA's predecessor, Chrysler Group LLC.  The acquisition was completed in January 2014, at which time Chrysler Group LLC became a wholly-owned indirect subsidiary of Fiat and was renamed FCA US

COMPLAINT—CLASS ACTION- 6

LLC. FCA's principal place of business and headquarters is located in this District at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

15.     FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled motor vehicles. Like its predecessor, Chrysler, FCA is one of the "Big Three" American automakers, in addition to Ford and General Motors.

16.     FCA distributes and sells new and unused passenger cars and motor vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands. Major divisions of FCA also include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division.

17.     Among the motor vehicles FCA has distributed and sold are the following "Class Vehicles":

        a.      2011-2016 MY Dodge Journey (FWD)

        b.      2011-2014 MY Chrysler 200 / Dodge Avenger (FWD)

        c.      2011-2012 MY Dodge Caliber (FWD, CVT)

        d.      2011-2016 MY Jeep Compass/Patriot (FWD, CVT)

18.     FCA and its agents have designed, manufactured, distributed, warranted, offered for sale, sold, and leased the Class Vehicles—with the knowledge and intent to market, sell, and lease them in all 50 states, including in Michigan.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

19.     Dealers act as FCA's agents in selling motor vehicles under the Fiat Chrysler name and disseminating vehicle information provided by Fiat Chrysler to customers.

20.     Fiat, the corporate parent of FCA, is a Dutch corporation headquartered in London.  Fiat owns numerous European automotive brands in addition to FCA's American brands, including Maserati, Alfa Romeo, Fiat Automobiles, Fiat Professional, Lancia, and Abarth.  As of 2018, Fiat Chrysler is the eighth largest automaker in the world by sales alone.[8]

21.     Subject to a reasonable opportunity for further investigation or discovery, Plaintiff alleges that FCA employees oversaw or were responsible for approving elements of design and/or strategies related to emission compliance for the Class Vehicles.  Fiat also sold, offered for sale, introduced into commerce, or delivered the Class Vehicles, with the intent to market or sell them in all fifty states, including in Michigan.

22.     Fiat Chrysler developed and distributed the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials relating to the Class Vehicles, with the intent that such documents should be purposely distributed throughout all fifty states, including in Michigan.  Fiat

---

[8] *2018 World Car Group Ranking,* Focus2Move, https://focus2move.com/world-car-group-ranking/ (last visited Mar. 14, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Chrysler is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

## IV.   JURISDICTION AND VENUE

23.     This Court has jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

24.     This Court has personal jurisdiction over Defendants because they conduct business in Michigan and have sufficient minimum contacts with Michigan.

25.     This Court has specific jurisdiction over Fiat Chrysler Automobiles N.V. because it has purposefully availed itself of this forum by directing its agents and distributor— FCA US LLC—to take action here.

26.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, as set forth in more detail below, and because Defendants have caused harm to Class members residing in this District, as explained below.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

27.     FCA is headquartered in Auburn Hills, Michigan.  Thus, FCA conducts substantial business in this District, and many of the actions giving rise to Plaintiff's claims emanated from this District.

28.     Moreover, FCA has marketed, advertised, sold and leased the Class Vehicles in this District, and has caused harm to Class Members residing in this District.

29.     In addition to Defendants' activities here, the Environmental Protection Agency ("EPA") has an important regulatory presence in this District. Significantly, Ann Arbor is home to the agency's National Vehicle and Fuel Emissions Laboratory ("NVFEL"), where EPA tests "new and used cars, light trucks and heavy-duty engines to ensure they meet emissions standards when they are new and throughout their useful lifetime."[9]  On information and belief, NVFEL is where EPA conducts substantial in-use emissions testing, the type of testing which indicated the Class Vehicles were not emissions compliant.

30.     Further, when the EPA issued its Press Release on March 13, 2019, revised on March 14, 2019 and described in greater detail below, the "Contact Us" address online from EPA's press release, available at

---

[9] *Vehicle and Engine Emissions Testing at the National Vehicle and Fuel Emissions Laboratory (NVFEL)*, EPA, https://www.epa.gov/vehicle-and-fuel-emissions-testing/vehicle-and-engine-emissions-testing-national-vehicle-and-fuel (last visited Mar. 15, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

https://www.epa.gov/recalls/fiat-chrysler-automobiles-voluntary-recall, links to the

EPA's office in Ann Arbor, Michigan:



31.

32.     Thus, venue is proper in this District because a substantial part of the

events and omissions giving rise to Plaintiff's claims occurred in this District.

## V.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

33.     Fiat Chrysler is a multinational corporation and the world's eighth

largest automaker, with $38.29 billion total current assets.[10]  FCA manufactures

---

[10] *Fiat Chrysler Automobiles N.V. Balance Sheet,* MarketWatch,
   https://www.marketwatch.com/investing/stock/fcau/financials/balance-sheet (last visited Mar. 14, 2019).

COMPLAINT—CLASS ACTION- 11

and distributes new passenger cars and motor vehicles such as Chrysler, Dodge, Jeep, Ram and Fiat brands, and continues to report climbing sales.  In fact, FCA reported that 2018 was their highest calendar year of retail sales in 17 years, with some brands increasing sales as high as 17%.[11]

34.     Many of FCA's impressive sales figures are built on consumers' trust that FCA vehicles would remain emissions compliant throughout the vehicles' expected life.  However, Fiat Chrysler has a recent history of failing to deliver on its promises regarding its vehicles' emissions and reliability.  Some of those broken promises are the focus of this Action.

35.     Fiat Chrysler knew well before manufacturing and distributing the Class Vehicles the emissions standards that the Class Vehicles were required to meet.  In 2010, nine years ago, the EPA and NHTSA finalized "a national program consisting of new standards for model year 2012 through 2016 light-duty vehicles that will reduce greenhouse gas emissions and improve fuel economy."  According to these requirements, "The EPA greenhouse gas standards require these vehicles to meet an estimated combined average emissions level of 250 grams of carbon dioxide ($CO_2$) per mile in model year 2016."[12]

---

[11] *FCA US Reports 2018 December and Full-Year Sales*, Cision PR Newswire (Jan. 3, 2019), https://www.prnewswire.com/news-releases/fca-us-reports-2018-december-and-full-year-sales-300772429.html (last visited Mar. 15, 2019).
[12] *EPA and NHTSA Finalize Historic National Program to Reduce Greenhouse Gases and Improve Fuel Economy for Cars and Trucks*, US EPA, (April 2010), https://nepis.epa.gov/Exe/ZyPDF.cgi/P100AKHW.PDF?Dockey=P100AKHW.PDF, (last viewed Mar. 14, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

36.     Similarly, with respect to nitrogen oxides ("NOx"), Tier 2 emissions standards were phased in from 2004 through 2009, with full implementation for new passenger cars in 2007, well before the model years of the Class Vehicles.

37.     However, despite ample warning of what the applicable emissions standards would be, on March 13, 2019, the EPA announced that "FCA has agreed to voluntarily recall 862,520 vehicles in the United States." [13]  These gasoline-powered vehicles are not compliant with emissions standards, as discovered through "in-use emissions investigations conducted by EPA and in-use testing conducted by FCA as required by EPA regulations."[14]

---

[13] *Fiat Chrysler Automobiles Issues Voluntary Recall of Nearly 900,000 Vehicles in the United States,* U.S. EPA, (Mar. 13, 2019) https://www.epa.gov/newsreleases/fiat-chrysler-automobiles-issues-voluntary-recall-nearly-900000-vehicles-united-states (hereinafter "EPA Announcement").
[14] *Id.*

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



38.    The California Air Resources Board ("CARB") issued a similar announcement the same day, noting "an investigation by [CARB] and the U.S. Environmental Protection Agency" and attributing the recall of nearly 900,000 FCA "passenger cars and SUVs… to a problem with their catalytic converters." [15] According to CARB Executive Officer Richard Corey, "[e]xcessive pollution from these vehicles impacts public health leading to a long list of serious ailments

---

[15] *Fiat-Chrysler announces recall of more than 850,000 passenger vehicles*, California Air Resources Board (Mar. 13, 2019) https://ww2.arb.ca.gov/news/fiat-chrysler-announces-recall-more-850000-passenger-vehicles (hereinafter "CARB Announcement").

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

including worsening the effects of asthma.  Thus, fixing the vehicles is in

everyone's best interest."[16]



**CALIFORNIA** AIR RESOURCES BOARD

ABOUT    OUR WORK    RESOURCES    BUSINESS ASSISTANCE    RULEMAKING    NEWS

## Fiat-Chrysler announces recall of more than 850,000 passenger vehicles

*50,000 vehicles affected in California*

*For immediate release*

**DATE**
March 13, 2019

**RELEASE NUMBER**
19-12a

**CONTACTS**

Dave Clegern

Public Information Office

dave.clegern@arb.ca.gov

(916) 322-2990

**CATEGORIES**

Topics  Enforcement

Programs  Aftermarket, Performance, and Add on Parts

**SACRAMENTO** – Fiat-Chrysler of America (FCA) today announced a recall of more than 850,000 gasoline-powered passenger cars and SUVs due to a problem with their catalytic converters. The recall was announced after an investigation by the California Air Resources Board (CARB) and the U.S. Environmental Protection Agency (EPA).There are about 50,000 of these vehicles in California.

In most of the country this is a voluntary recall. But in California, drivers who fail to get the necessary repairs will not be able to register their vehicles.

"Ensuring cars deliver the reductions of harmful pollutants is an urgent matter in California as we have several regions with the worst air quality in the country," said CARB Executive Officer Richard Corey. "Excessive pollution from these vehicles impacts public health leading to a long list of serious ailments including worsening the effects of asthma. Thus, fixing the vehicles is in everyone's best interest."

FCA is recalling these vehicles because they emit $NO_X$ above regulatory limits. FCA's own data and test results confirmed that the catalytic converters in these vehicles were malfunctioning. CARB testing helped the company find the appropriate solution to the problem.

$NO_X$ emissions in California are the most important contributor to ambient ozone and a key contributor to fine particulate matter pollution (PM 2.5) which is associated with premature death, asthma emergency room visits, increased hospitalizations due to exacerbation of chronic heart and lung diseases, and other serious health impacts.

California is home to both the highest ozone levels (South Coast) and ambient particulate matter levels (San Joaquin Valley) in the United States. Approximately 10 million Californians live in communities that exceed the federal ozone and particulate matter ambient air quality standards that were put in place to protect public health.

The vehicles affected by this recall are:

- 2011-2016 MY Dodge Journey (JC FWD)
- 2011-2014 MY Chrysler 200/Dodge Avenger (JS FWD)
- 2011-2012 MY Dodge Caliber (PM FWD CVT)
- 2011-2016 MY Jeep Compass/Patriot (MK FWD CVT)

Because of the large number of vehicles and two generations of engines involved the actual recall will occur in phases, by model year:

- 2011 – Q1 2019
- 2012 – Q2 2019
- 2013/14 – Q3 2019
- 2015/16 – Q4 2019

Owners will be notified by FCA to bring their individual vehicles in during these periods.

39.    CARB also stressed that the Class Vehicles "emit $NO_X$ above

regulatory limits" and that "$NO_X$ emissions in California are the most important

contributor to ambient ozone and a key contributor to fine particulate matter

---

[16] *Id.*

COMPLAINT—CLASS ACTION- 15

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

pollution (PM 2.5) which is associated with premature death, asthma emergency room visits, increased hospitalizations due to exacerbation of chronic heart and lung diseases, and other serious health impacts."[17]

40. According to the EPA, "[d]ue to the large number of vehicles involved and the need to supply replacement components—specifically the vehicle's catalytic converter—this recall will be implemented in phases during the 2019 calendar year beginning with the oldest vehicles first."[18] Thus, it is not clear if the required replacement components are readily available.

## A. Defendants' Emission-related Problems are Familiar

41. While the scope of Fiat Chrysler's latest emissions announcement regarding nearly 900,000 noncompliant vehicles is astounding, FCA consumers aer experiencing déjà vu. Just over two years ago, on January 12, 2017, the EPA and CARB issued Notices of Violation to Fiat Chrysler Automobiles N.V. and FCA US LLC alleging that certain "EcoDiesel" Ram and Jeep vehicles with 3.0-liter V6 diesel engines in the United States were equipped with eight Auxiliary Emissions Control Devices ("AECDs") that were not disclosed to the EPA, and that the

---

[17] *Id.*
[18] EPA Announcement, *supra* note 13.

COMPLAINT—CLASS ACTION- 16

operation of one or more of the AECDs alone or in combination resulted in excess emissions of NOx.[19]

42.      Consumers who bought or leased the EcoDiesel vehicles filed suit, asserting that the vehicles emitted significantly more pollutants than consumers reasonably expected, and more pollutants than were permitted under federal and state clean air laws.  Plaintiffs further asserted that the defendants intentionally misled consumers about the qualities and characteristics of the Subject Vehicles.

43.      In January 2019, following two years of litigation about EcoDiesel vehicles, Fiat Chrysler announced settlements with regulators and consumers.  The terms of the settlements are described in detail at www.ecodieselsettlement.com.

44.      In a separate instance, Fiat Chrysler was recently fined $77 million in U.S. civil penalties in the fourth quarter of 2018 when it was discovered its model year 2016 U.S.-assembled passenger car fleet fell short of required fuel economy targets.[20]

45.      The penalty, issued because subject vehicles missed Corporate Average Fuel Economy (CAFE) targets set by NHTSA, was the largest fine

---

[19] *Official Court-Approved Legal Notice: Settlements with Ram and Jeep EcoDiesel Vehicle Owners/Lessees, the Environmental Protection Agency, and the California Air Resources Board,* (2019) https://www.ecodieselsettlement.com/content/dam/fcacourtsettlement/pdf/Long_Form_Notice.pdf (last visited Mar. 14, 2019).

[20] David Shepardson, *Fiat Chrysler paid $77 million in U.S. fuel economy penalties in 2018,* Reuters (Feb. 7, 2019) https://www.reuters.com/article/us-fiat-chrysler-emissions-penalties/fiat-chrysler-paid-us-77-million-in-fuel-economy-penalties-in-2018-idUSKCN1PW2PZ, (last visited Mar. 14, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

imposed on a single automaker in five years.  Fiat Chrysler was the only automaker to pay a fine for the 2016 model year.[21]

46.     After years of civil and criminal investigations, fines, and settlements, Fiat Chrysler still is making news for emissions problems.  The EPA and CARB Announcements address vehicles produced by Fiat Chrysler that once again fail to perform reliably and as represented.  The number of affected vehicles could also increase as the EPA is continuing to investigate other potentially non-compliant vehicles.

47.     In its response to the EcoDiesel settlements, Fiat Chrysler has acknowledged the importance of renewed trust.[22]  However, in the face of the EPA and CARB Announcements, it is difficult to imagine a basis for continued trust by consumers.  Instead, they are left to clean up, again, after FCA's defective vehicles.

48.     Such repeated mistakes have elicited frustration from consumers, the public, and the Justice Department alike.  Jeffrey Bossert Clark, assistant attorney general for the Justice Department's Environment and Natural Resources Division,

---

[21] Jay Ramey, *Think you owe the government big? Fiat Chrysler was fined $77 million for missing fuel economy requirements,* AutoWeek (Feb. 12, 2019), https://autoweek.com/article/car-news/fca-fined-77-million-missing-fuel-economy-requirements-report-says (last visited Mar. 14, 2019).
[22] *FCA US Reaches Settlements on Emissions Requirements*, Global News Wire (Jan.10, 2019), https://www.globenewswire.com/news-release/2019/01/10/1686299/0/en/FCA-US-Reaches-Settlements-on-Emissions-Requirements.html (last visited Mar. 14, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

has recently called FCA "a multinational corporate bad actor" in connection with the company's irresponsibility and lack of accountability to consumers.[23]

## B.   Testing Reveals Emissions Problems With the Class Vehicles

49.   The EPA conducts and mandates testing on vehicles that are between one and seven years old to examine the effectiveness of the vehicle over the course of its useful life.

50.   These "in-use emissions investigations conducted by EPA and in-use testing conducted by FCA as required by EPA regulations" revealed that faulty catalytic converters will need to be refurbished or replaced.

51.   In 2010, the EPA and NHTSA finalized "a national program consisting of new standards for model year 2012 through 2016 light-duty vehicles that will reduce greenhouse gas emissions and improve fuel economy."  According to this rule, "[t]he EPA greenhouse gas standards require these vehicles to meet an estimated combined average emissions level of 250 grams of carbon dioxide ($CO_2$) per mile in model year 2016."[24]

---

[23] Ryan Beene and Gabrielle Coppola, *Fiat Hit by Emissions Again with U.S. Recall of 863,000 Cars,* Bloomberg (March 13, 2019), https://www.bloomberg.com/news/articles/2019-03-13/fiat-chrysler-recalls-almost-900-000-cars-over-emissions-breach?fbclid=IwAR2nasosAW8DbnUhfqBY5tVXCo8zs0SmiBpmZ_xa7AzSl8cTbyg3XTI2ttY (last visited Mar. 14, 2019)

[24] *EPA and NHTSA Finalize Historic National Program to Reduce Greenhouse Gases and Improve Fuel Economy for Cars and Trucks*, *supra* note 12.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

52.     According to the EPA, "Due to the large number of vehicles involved and the need to supply replacement components—specifically the vehicle's catalytic converter—this recall will be implemented in phases during the 2019 calendar year beginning with the oldest vehicles first."[25]  It is unclear if the required replacement components are available at this time or just how long consumers will have to wait for their vehicle's turn.

53.     Meanwhile, consumers' options to drive, sell, or otherwise dispose of their vehicle(s) may be severely limited in the face of their jurisdiction's emissions testing requirements, to say nothing of the vehicle's underlying resale value.

## C.     A Key Component of the Class Vehicles' Emissions System—The Catalytic Converter

54.     Gasoline is primarily made up of hydrocarbons.  Gasoline is converted into motion through combustion, also known as burning.  In an internal combustion engine ("ICE"), the ignition and combustion of the fuel occurs within the engine itself.  The process begins by mixing fuel and air, and then inducting this mixture into the cylinder during the intake process.  After the piston compresses the fuel-air mixture, the spark ignites it, causing combustion.  The expansion of the combustion gases pushes the piston during the power stroke.[26]

---

[25] EPA Announcement, *supra* note 13.
[26] *Internal Combustion Engine Basics*, US Office of Energy Efficiency & Renewable Energy (Nov. 22, 2013), https://www.energy.gov/eere/vehicles/articles/internal-combustion-engine-basics.

COMPLAINT—CLASS ACTION- 20

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384



Image: https://www.ck12.org/c/physical-science/internal-combustion-engine/lesson/Internal-Combustion-Engines-MS-PS/

55.     Combusting gasoline and oxygen primarily creates $CO_2$ and water, but because the combustion process does not burn 100% of its ingredients and because air contains gases other than oxygen (mostly nitrogen), NOx and carbon monoxide ("CO") also result.  Unburned hydrocarbons, *i.e.* fuel, and residues of fuel additives, may also remain after the combustion process.  Hydrocarbons emitted

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

from tailpipes react with NOx and sunlight to form photochemical pollution (smog), mainly ground-level ozone.[27]

56.     A catalytic converter, an emissions control device used in most gasoline vehicles in the United States, seeks to reduce the amount of NOx, CO, and hydrocarbons in tailpipe emissions.  The ubiquity of catalytic converters is not a recent phenomenon as American vehicles have been regularly equipped with them since 1975, when the Clean Air Act standards on carbon monoxide, hydrocarbons, and nitrates of oxygen came into effect.[28]  The "catalyst" in these emissions parts are comprised of platinum, rhodium and/or palladium, coated into a ceramic honeycomb or beads that are housed in the device, found between the engine and the exhaust pipe.[29]

57.     These catalysts change or "convert" the harmful compounds—CO, NOx, and hydrocarbons—into relatively harmless exhaust gases that do a fraction of the harm to air quality and the human respiratory system.  This is accomplished in two ways: (1) a reduction catalyst and (2) an oxidation catalyst.  The reduction catalyst creates harmless $O_2$ by using platinum and rhodium to separate the nitrogen and oxygen from NOx. The oxidation catalyst uses platinum and

---

[27] *Tailpipe Emissions,* Climate Change Connection (Aug. 22, 2017), https://climatechangeconnection.org/emissions/tailpipe-emissions/.

[28] *Automobile Emissions Reduction Efforts in the U.S. – Chronology*, EPA Air and Radiation Office of Mobile Services (1999), http://www.ehso.com/ehshome/auto-emissions_chronol.htm.

[29] *What is a catalytic converter and how does it work?,* HowStuffWorks, https://auto.howstuffworks.com/question66.htm (last visited Mar. 15, 2019).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

palladium to oxidize any unburned hydrocarbon and bind the $O_2$ with carbon to create $CO_2$.



Image: https://catsays.blogspot.com/2018/06/is-catalytic-converter-important-how.html

58.     Modern catalytic converters are equipped with sensors and monitors that communicate with the Engine Control Module or Powertrain Control Module in the vehicle to regulate the air/fuel mixture within the engine and the emissions system. When the air-to-fuel mixture is rich, *i.e.*, the mixture contains slightly more fuel than the optimum ratio, there is a lower level of oxygen in the exhaust. This allows the reduction catalyst to break down NOx. But to burn hydrocarbons

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

and carbon monoxide, the catalytic converter needs more oxygen, so the air/fuel mixture has to go "lean", *i.e.*, the mixture contains slightly less fuel and more air than the optimum ratio. This allows the catalyst to momentarily absorb oxygen and trigger a reaction that burns up the hydrocarbons and CO.[30] This constant back and forth, which happens without the drivers' knowledge, allows the vehicle to run cleanly while still maintaining promised fuel economy and power figures.

59.    A modern catalytic converter should last the life of the car or truck, assuming an "average" life of 100,000 miles or more (and often more than 200,000 miles). This is a good thing, given that catalytic converters utilize precious metals such as platinum, rhodium and/or palladium. The Class members here were not so lucky.

**D.    Injury to Consumers**

60.    Fiat Chrysler's failure to meet U.S. emissions standards in nearly 900,000 vehicles spanning model years from 2011-2016 harms consumers in numerous ways.

61.    At the outset, many consumers lack information about the emissions problems affecting their vehicles because FCA has not yet informed them. Thus, they are injured through lack of knowledge and information about their choices as

---

[30] *Catalytic Converters & O2 Sensors*, AutoTap (2012),
   http://www.autotap.com/techlibrary/catalytic_converters_and_o2_sensors.asp (last visited Mar. 15, 2019).

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

consumers, and the impact this announcement may have on themselves and their families' vehicles.  While waiting for repairs, many of the Class members' vehicles are an idled resource, unable to be used for any purpose.  The announcement of the massive recall, moreover, sets forth a recall schedule spanning all of 2019, meaning that many consumers' ability to sell, trade, or otherwise dispose of their vehicles will be affected or impaired for many months, at a minimum.

62.    However, FCA has known about the premature deterioration of catalytic converters in the Class Vehicles for several months.[31] According to FCA, the company "decided to recall the vehicles last year." And while FCA has been silent as to most consumers, FCA started sending an "interim notice" to Canadian consumers in August 2018 advising them that the Class Vehicles were equipped with catalytic converters that may release air pollutants that exceed Canadian emissions standards.  Further, according to news reports, FCA factored the recall into their 2018 budget long before they announced the recall on March 13, 2019.[32] While "[t]he company declined to release the expected cost of the recall," FCA has reported that the recall "was accounted for in last year's financial documents."[33]

63.    In FCA's Annual Report for 2018, the company alluded to potential recalls in its NAFTA sector without explicitly disclosing the recall which is the

---

[31] Ryan Beene and Gabrielle Coppola, *supra* note 24.
[32] Eric D. Lawrence, *supra* note 7.
[33] *Id.*

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

subject of this Action.  FCA acknowledged early on in its report that a number of risks and uncertainties could impact the company's performance in 2019, including "various types of claims, lawsuits, governmental investigations and other contingencies affecting us, including product liability and warranty claims and environmental claims, investigations and lawsuits."[34]

64.     In its annual report FCA also warned shareholders of the dangers of product recalls, noting that such actions may "harm our reputation, force us to halt the sale of certain vehicles and cause consumers to question the safety and reliability of our products."[35]  Of course, all of these observations are true, and all have the potential to, among other impacts, reduce the market value of FCA vehicles, including the Class Vehicles.

65.     It is also possible that new vehicles with the same or similar problems will come to light.  For example, on March 14th, the Jeep Patriot was added to the EPA Announcement one day after the announcement went live.  Consumers cannot be certain that the extent of the affected cars is known, or that the extent of the numbers and models of defective vehicles has been publicly announced.

---

[34] *Fiat Chrysler Automobiles N.V. Annual Report and Form 20-F for the year ended December 31, 2018* (Dec. 31, 2018), https://www.fcagroup.com/en-US/investors/financial_regulatory/financial_reports/files/FCA_NV_2018_Annual_Report.pdf (at 10).
[35] *Id.*

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

66.     Next, assuming consumers learn of the needed repairs, replacing the catalytic converters in hundreds of thousands of vehicles will be a substantial inconvenience to Plaintiff and class members.  Vehicle owners have not been told when or where they can get their car fixed to be emissions compliant.  All that has been announced is a rough schedule for the recall, spanning all of 2019, and that consumers "will receive a notification from FCA when parts are available for them to bring their vehicle in to be repaired[.]"  It is not clear if FCA has the necessary supplies in stock at this point.[36]

67.     Add to this confusion the fact that for California, and perhaps other states' consumers, CARB requires that their vehicles must be fixed in order to pass emissions requirements for registration.

68.     According to the current repair schedule, the oldest vehicles will be repaired first.  Model Year 2011 consumers will receive notification in Quarter One of 2019, Model Year 2012 consumers will receive notification in Quarter Two of 2019, Model Year 2013/2014 consumers will receive notification in Quarter Three of 2019, and Model Year 2015/2016 consumers will, allegedly, receive notification in Quarter Four of 2019.

---

[36] *EPA Announcement, supra* note 13.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

69.     Because Quarter One of 2019 is coming to a close in a few weeks from the date of filing, it is possible, if not likely, that these repairs will extend into 2020, causing some drivers to continue driving non-compliant vehicles for at least one year.

70.     Even once the fix is available for consumers, consumers will be inconvenienced.  While FCA states that owners and lessees of Class Vehicles will not pay fees for these repairs, they have not stated how they will compensate consumers for the cost of multiple trips to the dealerships or for reimbursement of alternative transportation costs in the likely scenario their vehicles are unable to be registered with state and local departments of motor vehicles.

71.     According to the EPA, "[o]wners who live in locations subject to inspection and maintenance may be required to have the recall performed prior to having the inspection performed."[37]  However, owners are also instructed that they "need to wait until they receive notification from FCA prior to scheduling an appointment at the dealership."  There is no specification of what consumers should do if they are required to have an inspection performed before they receive this notification from FCA.

---

[37] *Id.*

COMPLAINT—CLASS ACTION- 28

72.     Importantly, while they are waiting for a necessary fix, consumers in California "who fail to get the necessary repairs will not be able to register their vehicles," according to the CARB. There are over 50,000 Class Vehicles in California alone.[38] Thus, consumers in California may have no choice in the matter. They may have to spend the time and suffer the inconvenience of having their Class Vehicles repaired, as smog checks are required for most California vehicles every two years or upon registration of a new vehicle (thus restricting owners' ability to register their vehicles if they relocate to California).

73.     It is not yet clear what the registration impacts will be in many other states that have either adopted CARB emissions standards or that impose emissions or other reinspection requirements for vehicle registration.

74.     In addition to the uncertainty surrounding the ability to register their vehicles in the future, consumers are unsure how FCA's proposed catalytic converter replacement and software update will affect their vehicles' existing warranties. They are also justifiably concerned by potential out of pocket expenses imposed by dealerships prior to the fix.

75.     Assuming, for the sake of argument, that the Class Vehicles can be brought into compliance with emission standards without any degradation to

---

[38] *CARB Announcement*, *supra* note 15.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

performance or maintenance characteristics —Class members would still have

Class Vehicles that could not and did not deliver all of the characteristics for which

they paid.

## VI.   CLASS ACTION ALLEGATIONS

### A.      Class Definitions

76.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of

Civil Procedure, Plaintiff brings this Action on behalf of himself, the Nationwide

Class, and State Classes, defined as follows:

> **Nationwide Class:** All persons or entities in the United States (including its
> territories and the District of Columbia) who purchased or leased a "Class
> Vehicle."

77.     In addition to the Nationwide class, and pursuant to Federal Rules of

Civil Procedure Rule 23(c)(5), Plaintiff seeks to represent the following State

Classes as well as any subclasses or issue classes as Plaintiff may propose and/or

the Court may designate at the time of class certification:

> **Michigan Class:**  All persons or entities in the State of Michigan who
> purchased or leased a "Class Vehicle."

> **New Jersey Class:** All persons or entities in the State of New Jersey who
> purchased or leased a "Class Vehicle."

78.     For the purpose of these Class Definitions, "Class Vehicles" is

defined to include:

COMPLAINT—CLASS ACTION- 30

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

a.      All 2011-2016 Model Year Dodge Journey vehicles equipped with Front-Wheel Drive;

b.      All 2011-2014 Model Year Chrysler 200 / Dodge Avenger vehicles equipped with Front-Wheel Drive;

c.      All 2011-2012 Model Year Dodge Caliber vehicles equipped with Front-Wheel Drive and a Continuously Variable Transmission; and

d.      All 2011-2016 MY Jeep Compass/Patriot vehicles equipped with Front-Wheel Drive and a Continuously Variable Transmission Class Vehicles

79.    Excluded from the Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.  Also excluded from the Classes are individuals with personal injury claims resulting from the Class Vehicles.

80.    Plaintiff reserves the right to revise the Class definition based upon information learned through discovery and investigation.

81.    Plaintiff also reserves the right to modify the definition of the Nationwide and/or any State Class prior to class certification.

COMPLAINT—CLASS ACTION- 31

**B.      Class Certification Requirements**

82.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims regarding liability and entitlement to damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.  This Action has been brought and may be properly maintained on behalf of the Nationwide Class and/or State Class proposed herein under Federal Rule of Civil Procedure 23.

83.     **Numerosity: Rule 23(a)(1):** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.

84.     **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This Action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

85.     Whether Defendants engaged in the conduct alleged herein;

        a.      Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

COMPLAINT—CLASS ACTION- 32

b.      Whether the Class Vehicles have the defects alleged herein, including whether the emissions control system and/or catalytic converters in the Class Vehicles contain a defect;

c.      Whether the Class Vehicles fail to comply with EPA and/or state regulatory requirements regarding emissions;

d.      Whether the emissions control systems in Class Vehicles can be made to comply with EPA, CARB, and other required standards without substantially degrading the performance of the Class Vehicles;

e.      Whether Defendants knew or should have known that the Class Vehicles contained defects as alleged herein;

f.      When Defendants discovered, knew, or should have known of the existence of the defects alleged herein;

g.      Whether a reasonable consumer would consider the defects alleged herein and their consequences material to the decision to purchase or lease a Class Vehicle;

h.      Whether Plaintiff and the other Class members overpaid for their Class Vehicles as a result of the defects and Defendants' concealment thereof;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

i.      Whether Plaintiff suffered out-of-pocket losses as a result of the defects alleged herein and whether they will suffer out-of-pocket losses as a result of the proposed recalls;

j.      Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiff and Class members;

k.      Whether Defendants omitted, concealed, and/or failed to disclose material facts about the Class Vehicles;

l.      Whether Defendants knew or should of known that the Class Vehicles' emissions systems would function as intended throughout their useful life;

m.      Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

n.      Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

o.      Whether the remedies proposed by Defendants for the Class Vehicles would constitutes adequate and appropriate relief for the class;

p.      Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

COMPLAINT—CLASS ACTION- 34

q.      Whether Plaintiff and the other Class members are entitled to

equitable relief, including, but not limited to, restitution or injunctive relief;

86.      **Typicality: Rule 23(a)(3):** Plaintiff's claims are typical of the claims

of the Class members whom they seek to represent under Federal Rule of Civil

Procedure 23(a)(3) because Plaintiff and each Class member purchased a Class

Vehicle and were similarly injured through Defendants' wrongful conduct as

described above.  Plaintiff and the other Class members suffered damages as a

direct, proximate result of the same wrongful practices by Defendants.  Plaintiff's

claims arise from the same practices and courses of conduct that give rise to the

claims of the other Class members.  Plaintiff's claims are based upon the same

legal theories as the claims of the other Class members.

87.      **Adequacy: Rule 23(a)(4).**  Plaintiff will fairly and adequately

represent and protect the interests of the Class members as required by Federal

Rule of Civil Procedure 23(a)(4).  Plaintiff has retained counsel competent and

experienced in complex class action litigation, including vehicle defect litigation

and other consumer protection litigation.  Plaintiff intends to prosecute this Action

vigorously.  Neither Plaintiff nor his counsel have interests that conflict with the

interests of the other Class members.  Therefore, the interests of the Class members

will be fairly and adequately protected.

**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

88.     **Declaratory and Injunctive Relief: Rule 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

89.     **Superiority: Rule 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## VII.   ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

90.     For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

COMPLAINT—CLASS ACTION- 36

91.    Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered that Defendants were failing to inform consumers and concealing and misrepresenting the true emissions levels of their vehicles.

92.    Plaintiff and the other Class members could not have reasonably discovered, and did not know of facts that would have caused a reasonable person to suspect, that Defendants may have failed to report information within their knowledge to consumers until shortly before this Action was filed.

93.    Likewise, a reasonable and diligent investigation could not have disclosed that Defendants had information in their possession about the existence of its sophisticated emissions deception and that they omitted and concealed that information, which was only discovered by Plaintiff shortly before this Action was filed.

A.    **Tolling Due To Defendants' Concealment**

94.    Throughout the relevant time period, all applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts alleged in this Complaint.

95.    Upon information and belief, prior to the date of this Complaint, if not earlier, Defendants knew of the faulty emissions systems in the Class Vehicles, but continued to distribute, sell, and/or lease the Class Vehicles to Plaintiff and the

class members.  In doing so, Defendants concealed and expressly denied the existence of problem with excess emissions, and/or failed to notify Plaintiff and the Class members about the true nature of the Class Vehicles.

96.     Instead of disclosing their deception, or that the emissions from the Class Vehicles were far worse than represented, Defendants falsely represented that its vehicles complied with federal and state emissions standards, and that they were reputable manufacturers whose representations could be trusted.

## B.     Estoppel

97.     Defendants have a continuous and on-going duty to tell the truth about their products and to disclose to Plaintiff and the other Class members the facts that they knew about the emissions from Class Vehicles, and of those vehicles' failure to comply with federal and state laws.

98.     Although they had the duty throughout the relevant period to disclose to Plaintiff and Class members that they had engaged in the deception described in this Complaint, Defendants chose to evade federal and state emissions and clean air standards with respect to the Class Vehicles, and intentionally misrepresented their blatant and deceptive lack of compliance with federal and state law regulating vehicle emissions and clean air.

99.     Defendants actively concealed the true character, quality, performance, and nature of the emissions systems in the Class Vehicles, and

COMPLAINT—CLASS ACTION- 38

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiff and the class members reasonably relied upon Defendants' knowing and active concealment of these facts.

100. Thus, Defendants are estopped from relying on any statutes of limitations in defense of this Action.

## VIII. CLAIMS FOR RELIEF

**A.    Claims Asserted on Behalf of the Nationwide Class**

### NATIONWIDE COUNT I
### IMPLIED AND WRITTEN WARRANTY
### Magnuson - Moss Warranty Act (15 U.S.C. §§ 2301, et seq.)

101. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

102. Plaintiff brings this Action on behalf of himself and the Nationwide Class against Defendants.

103. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

104. Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

105. Defendants are a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4) and (5), respectively.

106. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

107.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

108.   The amount in controversy of Plaintiff's individual claims meets or exceeds $25.00 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this lawsuit.

109.   Defendants provided Plaintiff and each member of the Class with "written warranties" and "implied warranties," as identified above, which are covered under 15 U.S.C. § 2301(6) and (7), respectively.

110.   The terms of these warranties became part of the basis of the bargain when Plaintiff and each member of the Class purchased their Class Vehicles.

111.   Defendants breached these written and implied warranties as described in detail above.  Without limitation, the Class Vehicles share a common design defect in that they currently emit more pollutants than: (a) is allowable under the applicable regulations, and (b) was revealed to regulators, consumers, and the driving public.  Without limitation, the Class Vehicles share common defects requiring replacement of the Class Vehicles catalytic converters and other repairs and/or modifications to the emissions control systems of the Class Vehicles.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

112.   Plaintiff and each member of the Class have had sufficient direct dealings with Defendants or its agents (including dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff and each member of the Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff and each member of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of Defendants' implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

113.   Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle, Defendants knew, or should have known, of their misrepresentations and/or material omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff or members of the Class resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

114.   In addition, given the conduct described herein, any attempts by Defendants, in their capacity as warrantors, to limit the implied warranties in a manner that would exclude coverage of the defect is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defect is null and void.

115.   As a direct and proximate result of Defendants' breach of the written and implied warranties, Plaintiff and each member of the Class have suffered damages.

116.   Plaintiff, individually and on behalf of the Class, seek all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

117.   The warranty laws of each state, which are incorporated into this claim, are set forth below.

**B.     State Class Consumer Protection Claims**

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(Mich. Comp. Laws § 445.903, *et seq.*)**

118.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

119.   Plaintiff brings this Action on behalf of himself and the Michigan Class against all Defendants.

120.   The Michigan Consumer Protection Act ("Michigan CPA") makes unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce …."  Mich. Comp. Laws § 445.903(1).

121.   Defendants, Plaintiff, and the Michigan State Class members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

122.   Defendants are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

123.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Michigan CPA.  In so doing, and by marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Mich. Comp. Laws § 445.903(1):

a.   Causing likelihood of confusion or of misunderstanding as to the approval or continuing certification of the Class Vehicles by, among other things and upon information and belief, omitting, concealing and suppressing the fact that the Class Vehicles did not achieve their represented fuel efficiency and emissions standards, and emitted unlawfully high levels of pollutants such as NOx.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

b.      Representing that the Class Vehicles have continuing approval, characteristics, uses, or benefits that they do not have by, among other things, concealing and/or failing to timely disclose to consumers the fact that the Class Vehicles had defective emission controls and defective catalytic convertors.

c.      Representing that the Class Vehicles are of a particular and continuing standard, quality and grade when they are not for the reasons described above.

d.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding for the reasons described above.

124.   Had they known the truth, Plaintiff and the Michigan State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

125.   Plaintiff and Michigan State Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

126.   Defendants had an ongoing duty to Plaintiff and the Michigan State Class to refrain from unfair and deceptive practices under the Michigan CPA in the course of their business.  Specifically, Defendants owed Plaintiff and Michigan

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

State Class members a duty to disclose all the material facts concerning the Class Vehicles, they intentionally concealed it from Plaintiff and the Michigan State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

127.   Plaintiff and Michigan State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information. Plaintiff and the members of the Class have sustained damage because purchased vehicles that were not as represented; because their ability to sell, trade or dispose of them has been compromised; because they own Class Vehicles that should never have been placed in the stream of commerce; and because they are diminished in value as a result of Defendants' fraud.

128.   Defendants' violations present a continuing risk to Plaintiff and the Michigan State Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

129.   Pursuant to Mich. Comp. Laws § 445.911, Plaintiff and the Michigan State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Michigan CPA.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mich. Comp. Laws §§ 440.2314 and 440.2860)

130.   Plaintiff realleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.   Plaintiff brings this Action on behalf of himself and the Michigan State Class against Defendants.

132.   Defendants were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(c).

133.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

134.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

135.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

136.   Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.  The Class Vehicles were not in merchantable condition because their emissions violate state and federal laws.  The Class Vehicles were not fit for

COMPLAINT—CLASS ACTION- 46

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

their ordinary purpose as their emissions control systems and catalytic converters were defective.

137.   Defendants' breaches of the implied warranty of merchantability caused damage to the Plaintiff and the Michigan State Class.  The amount of damages due will be proven at trial.

## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. § 56:8-1, *et seq.*)

138.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

139.   Plaintiff brings this Action on behalf of himself and the New Jersey State Class against all Defendants.

140.   Defendants, Plaintiff, and the New Jersey State Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

141.   Defendants are engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (e).

142.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.

143.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA.  As described above:

a.    Defendants concealed, suppressed, omitted and failed to disclose material facts about the Class Vehicles in connection with their sale and advertisement of the Class Vehicles, causing likelihood of confusion or of misunderstanding as to the approval or continuing certification of the Class Vehicles by, among other things and upon information and belief, omitting, concealing and suppressing the fact that the Class Vehicles did not achieve their represented fuel efficiency and emissions standards, and emitted unlawfully high levels of pollutants such as NOx.

b.    Defendants omitted material facts regarding the Class Vehicles' continuing approval, characteristics, uses, and benefits that they do not have by, among other things, concealing and/or failing to timely disclose to consumers the fact that the Class Vehicles had defective emission controls and defective catalytic convertors.  Defendants represented that the Class

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Vehicles are of a particular and continuing standard, quality and grade when they are not, for the reasons set forth above.

       c.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding, for the reasons set forth above.

144.   By the foregoing, and by marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in the following unfair or deceptive acts or practices as prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

145.   Defendants' scheme and concealment of the true characteristics and continuing performance of the emission control systems in the Class Vehicles were material to Plaintiff and the New Jersey State Class, as Defendants intended.  Had they known the truth, Plaintiff and the New Jersey State Class would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature and performance had been disclosed—would have paid significantly less for them.

146.   Plaintiff and New Jersey State Class members had no way of discerning that Defendants' representations were false and misleading, or

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control systems contained extremely sophisticated technology.  Plaintiff and New Jersey State Class members did not, and could not, unravel Defendants' deception on their own.

147.   Defendants had an ongoing duty to Plaintiff and the New Jersey State Class to refrain from unfair and deceptive practices under the New Jersey CFA in the course of their business.  Specifically, Defendants owed Plaintiff and New Jersey State Class members a duty to disclose all the material facts concerning the Class Vehicles' emission control systems because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the New Jersey State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

148.   Plaintiff and New Jersey State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information. But for Defendants' concealment, Plaintiff and the members of the Class would not have purchased the Class Vehicles or would have paid less for them, because the value of their vehicles has been impaired.  Plaintiff and the members of the Class have sustained damage because purchased vehicles that were not as represented; because their ability to sell, trade or dispose of them; because they own Class

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Vehicles that should never have been placed in the stream of commerce; and because they are diminished in value as a result of Defendants' fraud.

149.   Defendants' violations present a continuing risk to Plaintiff and the New Jersey State Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

150.   Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the New Jersey State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New Jersey CFA.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314 and 2A-212)

151.   Plaintiff realleges and incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

152.   Plaintiff brings this Action on behalf of himself and the New Jersey State Class against Defendants.

153.   Defendants were at all relevant times "merchants" with respect to motor vehicles under N.J. Stat. Ann. § 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

154.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(p).

COMPLAINT—CLASS ACTION- 51

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

155.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

156.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 2A-212.

157.   Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty.  The Class Vehicles were not in merchantable condition because their emissions violate state and federal laws.  The Class Vehicles were not fit for their ordinary purpose as their emissions control systems and catalytic converters were defective.

158.   Defendants' breaches of the implied warranty of merchantability caused damage to the Plaintiff and the Michigan State Class.  The amount of damages due will be proven at trial.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Classes, respectfully requests that the Court grant certification of the proposed Nationwide Class and State Classes, including the designation of Plaintiff as the named representative of the Nationwide Class and respective State Classes, the appointment of the undersigned as Class Counsel, and

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendants, as follows:

      a.     A declaration that any applicable statutes of limitation are tolled due to the fraudulent concealment alleged in this complaint, and that Defendants are estopped from relying on any statutes of limitations in defense;

      b.     An order enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

      c.     Injunctive and equitable relief in the form of a comprehensive program to repair and modify all Class Vehicles, and to fully reimburse and make whole all Class members for all costs and economic losses that the Class Vehicles could incur by being brought into compliance with federal and state law;

      d.     Environmental reparations, mitigation, and remediation to offset the harm caused by the Class Vehicles, based on the mileage driven by all Class Vehicles and/or other appropriate measures of environmental harm;

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

e.     Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law;

f.     A determination that Defendants are financially responsible for all Class notice and administration of Class relief;

g.     Any and all applicable statutory and civil penalties;

h.     An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

i.     An award of costs and attorneys' fees;

j.     Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

Such other or further relief as the Court may deem appropriate, just, and equitable.

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## X.   DEMAND FOR JURY TRIAL

159.   Pursuant to Federal Rule of Civil Procedure 38 (b), Plaintiff demands a jury trial.

DATED: March 15, 2019

Respectfully submitted by,
*/s/Lynn Lincoln Sarko*
Lynn Lincoln Sarko
Gretchen Freeman Cappio
Ryan McDevitt
Rachel Morowitz
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
rmorowitz@kellerrohrback.com

Alison Chase
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Fax: (205) 456-1497
achase@kellerrohrback.com

KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384